322-0143 Erie Insurance Company and Erie Insurance Exchange, Appalese v. Thomas R. Gibbs, DDS Appellant. Thank you. Mr. Sirigelis, did I get that even close? Close enough. Sirigelis, Your Honor. Thank you. Thank you. I'll begin. My name may please the Court. Good afternoon. My name is Peter Sirigelis. I'm arguing on behalf of the appellant, Dr. Gibbs. This is an appeal from the trial court's order holding that Dr. Gibbs' guilty plea in a misdemeanor charge resulting from an incident at the ER on August 14, 2018, operated as collateral estoppel to bar Dr. Gibbs from arguing in this suit that the events and resulting injuries described in the under the policy of insurance that Dr. Gibbs carried with Erie Insurance on the night of the incident. The Court's read the briefs and I'm not going to go into detail regarding the allegations of the underlying complaint, but it does bear mentioning that both Dr. Gibbs and Erie at page seven of their brief agree that the underlying complaint does not allege intentional conduct, which means viewed in isolation, the allegations of the underlying complaint do not fit within the rather the case is about whether things outside of the complaint that were introduced by Erie into the circuit court record operated as collateral estoppel to alter the allegations of the underlying complaint. And to that end, Erie introduced a number of materials outside of the underlying complaint to contradict the allegations. Those are the Downers Grove Police Report, hospital records from Good Samaritan Hospital, the misdemeanor battery charges and convictions obtained as part of a plea deal, and a federal criminal fraud complaint involving violations of the Employment Retirement Income Security Act, wherein as part of a plea deal there, Dr. Gibbs apparently referred to the events of August 14, 2018. Now we've made arguments in our briefs regarding whether it was proper for the circuit court to refer to anything outside of the complaint at all. And to what extent it could have done that, or to what extent it should have gone outside of the complaint. And I'm going to rely on my briefs for those points, unless the court has any questions regarding the misdemeanor case or the federal criminal fraud case. So if there are no questions, I'm going to argue that even considering all of the extraneous materials, especially the guilty pleas and the misdemeanor cases, all the materials do not preclude the possibility that a jury in the underlying civil case might conclude that the injury took to Adams on August 14, 2018 was the result of unintentional conduct. Now, whether the misdemeanor convictions there were a result of the pleas reached by Dr. Gibbs and the prosecutor should have been afforded collateral estoppel effect is, of course, guided by the Illinois Supreme Court decisions in American Family v. Savickas. The site is 193 378 and Telerico v. Dunlap 177 ill second 185 and the appellate court cases applying those two opinions. Now, all the cases in this arena discuss the threshold required requirements of collateral estoppel. Those being, of course, the identity of the issues, a final judgment, and the fact that the party against whom estoppel was sought was either a party or a privity with party to the first case. We're, of course, disputing element one. The court has or will review the record before deciding the case and will note that the issues in the criminal misdemeanor case where Adams was the complainant in the underlying civil lawsuit are not the same. The issues in the criminal misdemeanor case to which Dr. Gibbs did not plead guilty in the first place but rather stipulated to a sparse set of facts as part of a plea deal was whether Gibbs made contact with Adams, i.e. a push, which caused Adams to fall. The issue in the underlying case is whether urine, which was on the floor in the emergency room, caused Adams to slip and fall and sustain a broken kneecap. The intentional conduct exclusion does not apply because the record does not foreclose, at least in so far as my reading, the possibility that the urine found its way onto the floor because Dr. Gibbs, one, lost control of his bladder. No doubt he was inebriated. Or whether the urine was spilled when Dr. Gibbs attempted to discard the urinal that was provided to him in the ER. Now, Erie seems to try to make light of this case by labeling a simple slip and fall complaint as one for negligent urination. Further, Erie placed semantics by arguing that the collateral estoppel it sought imposed only collateral estoppel upon Dr. Gibbs in this case and not the slip and fall case. But the simple fact is that the circuit court's decision in this case, if affirmed, is preclusive of any argument in the civil case. And because the facts of the record before the court do not foreclose the possibility of negligence and or no liability in the underlying case, the circuit court should have either found in favor of Dr. Gibbs on the duty to defend or stayed the declaratory judgment suit until the slip and fall case was over. As a side note, staying the declaratory judgment case until resolution of the slip and fall case would have afforded Dr. Gibbs of one of the most valuable benefits under his policy, and that's for defense of a lawsuit, which Erie terminated as soon as the circuit court entered judgment. There's no defense cost reimbursement endorsement to the Erie policy. So if the court had stayed the case, Dr. Gibbs would have had the benefit of a complete defense until a jury in the underlying case found intentional conduct, which may still happen. And of course, in Illinois, an insurer owes the duty to defend even if the allegations are groundless, false, or fraudulent. In any event, even if the court deems that the identity of the issues is satisfied, that's element one, the doctrine should not have been applied because of incentive to litigate principle discussed in the case law in the briefs. Savickas, the seminal case here, applied collateral estoppel to an insurance action following a criminal conviction by a jury and admissions subsequent to that conviction and a deposition by Savickas himself that he intended to shoot the victim in that case. Obviously, a jury verdict in a criminal case and subsequent admissions bear a high level of reliability. So foreclose an opposite argument in a case with a lower evidentiary threshold. Some of these cases discussed in our briefs, namely Telerico, Justice Hyman's dissent in Allstate v. Heber, and Metropolitan v. Pittington from this court in 2005, noted the reliability of jury verdicts in criminal cases because those cases represented quote unquote a struggle to the finish. Here we are dealing with a plea where Dr. Gibbs kept himself out of jail and avoided further professional harm. Erie offers a false equivalency in its brief on page 21 where it argues that the incentive to litigate exception does not apply because the sentence ultimately imposed by the court and the sentence recommended the state after the plea deal were nearly identical. That's not the point. The point is that Dr. Gibbs faced a Class A misdemeanor that carried a maximum sentence of 364 days in jail, and that by agreeing to the plea deal, he kept himself out of jail. Had he not taken the plea, the state could and likely would have pursued jail time if Dr. Gibbs forced them to put on trial. Furthermore, this case is not like Carriato where the insured pled guilty to attempted murder and made subsequent admissions of intentional conduct in a deposition after he robbed the victim and stabbed him 17 times. Nor is the case like Danner where the insured drove his truck into the victim and alighted from his vehicle and then proceeded to beat the victim with a golf club. Nor does Shishan, which is cited by Erie, that's 258-IL-AP-803, provide any guidance whatsoever. First, the insured was accused of sexually molesting a number, I counted eight and maybe more, victims, including a developmentally disabled adult. The most instructive cases for this decision are the Illinois Supreme Court's Telerico, the Second District's Allstate v. Kovar, and this court's Metropolitan v. Pinnington. Telerico stunned two victims with a stun gun on separate occasions and grabbed one by the genitalia and kissed the victim, actions for which he later pled guilty. In a subsequent civil case, the Illinois Supreme Court found that collateral estoppel of the criminal conviction did not apply because the plea obviously involved consideration of an offer of a reduced charge in more lenient resulting sentence. The court also noted that the discretion afforded a prosecutor regarding which cases to take to trial and which to wrap up quickly was a thing to consider. There was a strenuous dissent in that case, but the majority, which this court is bound to follow, did not afford collateral estoppel to that guilty plea. Kovar, likewise, refused to give collateral estoppel effect to a guilty plea because of the same reasons. The guilty plea entered by the insured gave him an opportunity for a lighter sentence. And this court in Pinnington did the plea to avoid a potential 31-year jail sentence. Now, certainly, 31 years is a lot longer than 364 days. But when Dr. Gibbs was offered a deal that gave him no jail time, he had little incentive to continue to litigate the criminal charge. Affirming the circuit court here goes against the principles that all this case law seeks to protect. First, the circuit court failed to plead. The decision robbed Dr. Gibbs of the opportunity to contest liability in the underlying case and strips him of a defense provided by insurance prematurely. Furthermore, affirming the circuit court has the real possibility of harm to public policy because it affects prosecutorial discretion and the speedy resolution of criminal charges because it would dissuade the prosecutors and defendants from making those types of plea deals. This isn't a case about a shooting injury or stabbing or the like. This is an isolated, simple, slip-and-fall case where the record leaves open the possibility of the injury happening unintentionally. The court should reverse into remand for the entry of judgment on pleadings for Dr. Gibbs. It's a duty-to-defend case. And we all know the standard that duty-to- defend cases get. And on this record, one cannot find that the intentional conduct exclusion to bar a duty-to-defend. Now, my opponent is going to, you know, parade all of the supposed wrongs that Dr. Gibbs did. And I will admit the facts of this case are unsavory. But if you follow the case law, it should result in reversible and remand to the circuit court. Unless the court has questions, I'll reserve for reply. Are there any questions? No. Not at this time. Okay. Mr. DeWitt. May it please the court. Doug DeWitt on behalf of Erie Insurance Company and Erie Insurance Exchange. I think we should start off by noting that there's no dispute that Dr. Gibbs was found guilty and convicted of intentionally, without legal justification, causing bodily injury to Mr. Adams in that Dr. Gibbs pushed Mr. Adams to the ground, causing injury to his left knee. It's that finding of intentional battery that results in collateral estoppel, precludes coverage on the Erie policies, and it's frankly what brings us here today. And let me now address some of the statements by Mr. Sergelis. So to begin with, and I know that we talked, he talked a little bit about the stay and why the trial court should have stayed the underlying action. Well, as we articulated in our briefs, there's no basis for the stay of the underlying action or for the coverage action in particular because, well, first off, the discussion about the abuse of discretion by the trial court, which is the proper standard, wasn't raised by Dr. Gibbs in his opening brief, nor was the standard laid out. And so it wasn't really frankly addressed until the reply brief. But when you actually look at it, there's sort of a couple, I guess, problems with the argument that the underlying or that the coverage case should have been stayed. First off, it misunderstands or essentially mischaracterizes what Erie was attempting to do in this case and what it did do and what the trial court allowed it to do, which is it's just trying to apply factual findings and the conviction from a criminal action that already existed and apply them in this case in the coverage action. And so these facts were already established. We're not attempting to make the court make factual findings, which is obviously the big concern about when you have a coverage action proceeding at the same time as an underlying action. And that wasn't going on here. And then you also, again, the facts that we're discussing in this action, in the coverage action, have already been established. Dr. Gibbs stipulated to the facts. He was the one that stipulated to the facts. And it was the court, after he waived his jury, his right to a jury, it was the criminal court that went ahead and, based on the stipulated facts, found him and convicted him of intentional battery of Mr. Adams, which, again, resulted in the injury to his knee. So for that reason, there's frankly no basis for the stay of the case. And I think, again, you can go to the very case that Mr. Sargalas mentioned, which is Pittington. Pittington talked about the fact that you had an underlying action that only alleged negligence, and then the coverage action was discussing whether something was intentional conduct. And in that case, the court said, because of that, there's no danger of determining ultimate facts in the underlying case. That's exactly what we have here. We have the negligent urination, straight, whatever, however Mr. Sargalas wants to refer to it, but that's essentially what it boils down to. And we're talking about intentional conduct, and that's what we're seeking in our complaint, in our action, is a ruling on. I think that also Dr. Gibbs complains about the use of extrinsic evidence in the termination by the trial court and by this court, ultimately, as to his rights under the policy. And again, historically, it's starting way back in Envirodyne, which I believe was 1980 sometime, coming through to the Supreme Court in Pekin. They've addressed that, and they've said that typically, you look to the four corners, but there are circumstances when you're allowed to go outside. And frankly, they say that you're entitled to do it in any summary judgment proceeding, which is what governs our action here, was all the cross motions around summary judgment. And so, we're allowed and entitled to introduce evidence. Now, there are certain limitations on that, and those limitations were not violated by any chance, by any. Mr. DeWitt, how did you get the, I'll start with the police report. How did that come into the summary judgment motion? Sure. I think that the, so with respect to the police report and the hospital records, I think that those are the agreements in the federal fraud action. Those, frankly, come in under Envirodyne because we think it gives flavor and color to exactly what's going on. It doesn't overlap with the underlying, it's not determining any ultimate issues in the underlying case. As an evidentiary issue, how did you get those, how did you get that extrinsic evidence in? It came in without objection, I believe. And if it was over objection, it wasn't raised on appeal. And so, to the extent that you're asking like over hearsay objections, et cetera, business records. Exactly. Yeah. So, that, I don't believe it was actually even objected to when the evidence came in a trial, or not trial, on summary judgment. Apologies. But, and so, in addition to the fact that it kind of, we're allowed to rely on extrinsic evidence under Envirodyne, it also responds to an argument made by Dr. Gibbs about whether or not he had any incentive to litigate. And again, that gives color, it's the circumstances of what was going on. Dr. Gibbs agreed to stipulate two facts that ultimately resulted in his guilty conviction. Again, it wasn't a guilty plea. To make a point of saying it was not a guilty plea, it was a conviction by the judge based on stipulated facts by Dr. Gibbs. And I think that's pertinent, and it's also critical as to why that's binding on him in this action. But with respect to the, going back to the question of Justice Hedlund, it also impacts our need to sort of give a little bit more flavor to what was going on and why we don't think that there's any basis for Dr. Gibbs to argue that there was no incentive to litigate. Because again, look at the facts or the evidence outside of the criminal charge, you can see kind of, you get a better flavor and understanding of what's going on. And also, we think the extrinsic evidence in particular, well, it's more from the criminal transcript, but that's also relevant because Pekin discussed compelling and unusual circumstances. And we think that Dr. Gibbs' defense counsel statements that they had been working and coordinating with underlying plaintiff's counsel to make sure that they could collect and get a judgment against Erie, I think that that's an unusual circumstance, particularly in the insured-insurer context that also then permits extrinsic evidence. And finally, not finally, but also with respect to the impact of the guilty conviction, again, a few sort of statements that we might disagree with the way that's being characterized by Dr. Gibbs and Mr. Sergelis is that, first of all, it was not a guilty plea, it was a stipulation to facts that ultimately, after he waived his jury demand, he was able to then obtain, he was not able to obtain, he obtained a conviction after that. The judge found him guilty of the charge, which if you look to the record in the criminal charge, it was, again, for intentionally causing and without legal justification bodily harm to Anthony Adams in that Thomas R. Gibbs pushed Anthony Adams to the ground causing injury to his left knee. When we think that for that reason, that he's bound by that, it doesn't matter that it was a plea. There's certainly no exception in any of the court cases that talk about the fact that somebody waived their right to a jury trial and stipulated the facts that somehow that can, you get a pass and you're not essentially bound by that in other proceedings. And so, in particular, when Mr. Sergelis suggested that he did that, he did that stipulation in exchange for a lower sentence or as opposed to 364 days in jail potential, if you actually look to the record in particular, C-231, you'll see in the transcript some of the issues that there are, some of the documents that they're citing in their reply brief actually relate to the other battery conviction that he received with respect to the nurse that was in the room. The actual battery with respect to Mr. Adams, that starts at C-231, and you'll note that the court said, wait a minute, right before she accepted, when they started talking about the stipulated facts, she said, wait a minute, or he said, wait a minute, is there an agreement? Is there not an agreement on this? And they agreed, they said, sorry, there is not. It is a blind defense counsel. They're going in with no understanding of what the sentencing recommendation is going to be. So you had the state's attorney saying one thing, and then after the state's attorney went, you next had Dr. Gibbs' counsel explain why he thought that there should be lesser sentence imposed, as opposed to those two agreeing on a sentence and going in and agreeing to stipulated facts. So again, that's just one of the correct, something that we see as a bit of an overstatement with respect to the plea. And also, so I think that there's a discussion by Mr. Sterigelis that Savickas, Savickas, I'm not sure how you pronounce it, but that Savickas, and they talked about the fact that Savickas talks about an incentive to litigate, and that in our case, and that being Dr. Gibbs, had no incentive to litigate. Again, I don't think that's true, and you can look at some of the other documents that we submitted, first of all, you had, if Mr. Dr. Gibbs had beat the rap on battery, we wouldn't be having this discussion today because there would be no one, no finding of intentional conduct, right? And that's, that's ultimately what did happen here. The next, next section, or the next thing that we need to think about is that fraud, the transcript that we have from the fraud hearing, this other criminal matter, and there you can, because he had previously pled and agreed that he would, he had a deferred probation agreement in that case, it's relevant because once he was essentially accused of battery, that put that probation in danger, so he would have been able to prevail on that. Again, it does have an impact on that fraud case and the probation that he was supposed to receive there. And then lastly, I think what we need to keep in mind here is that the court is not required in this, the courts, this state's courts have said repeatedly, the courts are not required to wear judicial blinders. And that's essentially what Dr. Gibbs is asking this court to do in this panel. And again, it's, it's, it's, it's pretty clear what's going on in courts that this state's courts have done this multiple times, recognizing that you have essentially, you're not, you're not required to give credence to allegations that are nothing more than a transparent attempt to plead into coverage. And that's exactly what this is. Again, the negligent urination that injured the knee when we have a conviction and a stipulated set of facts regarding the conviction that says, I assaulted him, I battered him, intentionally battered him without legal provocation, the legal cause, and I injured his knee. And now we have a complaint that says something to the contrary in an attempt to, clearly a transparent attempt to plead into coverage. And I think that for that, for that reason, there's, I think that we're on all fours with, with Savickas. And I think that this court should absolutely affirm the trial court ruling because it's clear what happened here. Dr. Gibbs battered an individual. Dr. Gibbs was convicted for that battery. Dr. Gibbs and the underlying claimant have coordinated together in an attempt to collect insurance money. And that's just, that's not appropriate. And so I'm not sure if the panel has any additional questions for me. I have a couple, Justice McDade. First of all, the, I believe there was an agreement, but correct me if I'm wrong, a cap, basically, that the state was going to ask for additional discharge of one year and that the defendant was going to ask for court supervision. Am I correct about that, Mr. DeWitt? Yeah, I believe that there was, there were, there were differing viewpoints on what the sentencing should be, which again relates to why it was a blind plea. But to get back to Mr. Sergel's point, the 365 was off the table. We're really just talking about a conviction or court supervision, which is not a conviction. And then my second question is, is this a completely different case if that criminal case does not go to trial, if it's continued and you don't have that particular element of the stipulated finding of guilt? So with respect to the first question, again, I think that, I mean, it is, it's a misdemeanor case, but I don't think that you lose the incentive to litigate against a misdemeanor simply because you're not facing the maximum. Given the fact that he was a first-time offender, there was no maximum, frankly, that would have ever occurred. But so, I mean, so realistically speaking, 364 days is the outlier, but again, he was a first-time offender. So I think saying that there was a difference in belief, that being either 100%, I walk away scot-free, or I have to have a little bit of skin in the game, that doesn't mean that you have no incentive to litigate, no incentive. It's certainly not anything like the other cases that Mr. Staragella cited, where you have a 31-year-to-life sentence possibility, and then they say, you know what, nevermind, we're going to drop that down to reckless discharge of a firearm, which is a simple misdemeanor, which is, I believe, Pittington or Kovar. But anyways, and then with respect to the second question, I'm sorry, I've lost track of it. No, Mr. DeWitt, it was just simply that, isn't that the linchpin to your argument, the fact that there was a stipulated finding of guilt and everything else is extrinsic? Well, it is, for purposes of collateral estoppel, yes, that is the linchpin of collateral estoppel, but it doesn't mean that we're not also entitled to introduce additional evidence outside the four corners under Envirodyne, under Pekin. We're entitled to introduce extrinsic evidence, particularly because there's no overlap with the underlying action, because again, it was just a negligent claim, which, going back to Mr. Staragella's reliance on Pittington, they said that there's no issue with impacting and deciding ultimate issues in the underlying case when there's only a negligence claim. Thank you. Thank you. Are there any other questions? Okay, Mr. Saragalas, did I get it right? I think he's on mute. You're muted, Peter. Forgive me, I was commenting that your pronunciation was perfect that time. Thank you. I first want to address the difference between a guilty plea and stipulating to a set of facts. I, frankly, don't see the practical difference here, and I don't see how stipulating to a set of facts makes this case better for Erie, other than a guilty plea is somehow not as strong as stipulated facts. With regard to the, and I'm glad you picked up on it, Justice Huddle, with regard to the plea, there was a deal between the prosecutor and Dr. Gibbs that he would not seek the maximum sentence of 364 days in jail or any jail time. Dr. Gibbs' freedom is an important right, and all of the cases, Telerico, Kovar, Pittington, again, as I admitted in my opening argument, 31 years is a lot longer than 364 days, but a person's freedom is an important right that aligns with the incentive to litigate case law. I want to get back to Mr. DeWitt touched upon a collusion argument. I think that, first of all, again, it's a duty to defend case. Debt is stacked in favor of the insured. Insurance company has a duty to defend even fraudulent claims, okay? So that's base number one. But then you get to the collusion. The court, if it buys into this collusion argument, it's going to have to rewrite that case law. The collusion argument typically happens, a transparent attempt to plead into coverage happens after an insurance company files a declaratory judgment lawsuit, and then the insured, or forgive me, the claimant goes back and rewrites the allegations to get into coverage. That's Danner. Danner did that. He can insurance file the declaratory judgment suit, and then years later to plead into coverage. This court dealt with it in Pekin versus Frederick Quinn. That's just a different circumstance. In that case law, polluting and pleading into coverage does not fit this case. Adams prepared the complaint. I can't speak for him as to why he pled the complaint in the way he did. The complaint always sounded in negligence, and that's from the beginning. Adams is the master of his complaint. He pleaded the way he wanted to. The exceptional circumstance of Pekin versus Wilson doesn't exist here. That case, again, because the deck is stacked in favor of the insured, went outside of the four corners of the complaint to consider a self-defense exception to get coverage. This is an insurance company asking you to go outside of the four corners of the complaint, reach into things that should never have been introduced into the record, and find that that's conclusive of doctor gives his right to a defense. I think based on the cases, and if the court follows the case law in this case, I think it's going to have to reverse. Unless there are more questions, I'll rest. I don't have any others. I have no other questions, none. And we thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until tomorrow morning at nine o'clock.